IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAMON E. GOODRICH,

        Plaintiff,

        v.                          CASE NO. 14-3124-SAC-DJW

CORRECTIONS CORPORATION
OF AMERICA,

        Defendant.

**MEMORANDUM AND ORDER**

This pro se Complaint for Damages was filed by a federal prisoner confined at the Federal Prison Camp, Yankton, South Dakota. Mr. Goodrich complained of events that allegedly occurred from April 1 through September 5, 2012, while he was confined at the Leavenworth Detention Center, Leavenworth, Kansas (LDC), which is operated by defendant Corrections Corporation of America (CCA). Mr. Goodrich claimed that he "suffered violent illnesses caused by" his being served undercooked meat "on numerous occasions" and "unsanitary food preparation." He also claimed that as a result he was required to purchase numerous food items from the commissary and that defendant "deliberately" served such meals "to bolster its" profit from commissary sales. He further claimed that defendant failed to oversee its subcontractor's food service operation, and aided and abetted its fraudulent representation as to the

1

quantities and types of food served, adherence to food handling requirements, and compliance with the "food service requirements" in the contract between the USMS and the CCA. In addition he complained that, while inmates assigned to food service are initially screened for suitability, no periodic medical examinations are performed to establish that they continue to meet health and sanitation requirements despite the contract provision that requires the food service operation to comply with all local, state and federal laws. Mr. Goodrich contends that he was damaged in the amount of $200,000 as a result of the negligence of defendant's officers and employees.

After reviewing plaintiff's claims and allegations in the Complaint, United States Magistrate Judge David J. Waxse ordered issuance of summons. Defendant filed its "Answer of Defendant Corrections Corporation of America" (Doc. 8) generally denying plaintiff's allegations of tortious acts and liability and generally asserting "any and all affirmative defenses." In particular, defendant "vehemently denie(d)" plaintiff's allegations in paragraphs 9, 10 and 11 of the complaint and "demand(ed) strict proof thereof." Even though Mr. Goodrich was not required to file a response to defendant's Answer, he filed a pleading entitled "Plaintiff's Restistance to Defendant;s (sic) Motion to Dismiss Plaintiff's Complaint" (Doc. 11)("Response). He assumes that defendant moved to dismiss this

action "pursuant to 12(b)(6)," but no separate dispositive motion has been filed. "[I]n response" to defendant's demand for strict proof of exhaustion, plaintiff states that he has attached "the affidavit that will clearly establish that the plaintiff has exhausted (sic) all of his administrative remedies." However, the exhibits submitted by plaintiff with his Response show instead that Mr. Goodrich failed to "properly" exhaust administrative remedies prior to filing this lawsuit. As a result, the undersigned Judge has undertaken additional screening of the exhaustion issue pursuant 28 U.S.C. § 1915(e)(2)(B), and concludes that this action is subject to dismissal due to plaintiff's failure to properly exhaust the available prison administrative remedies.

A federal district court has an ongoing statutory responsibility under provisions of the Prisoner Litigation and Reform Act of 1996 (PLRA) to screen in forma pauperis complaints filed by inmates and to dismiss at any time a case that is found to warrant dismissal. Section 1915(e)(2) provides, in pertinent part, that "the court shall dismiss the case at any time if the court determines that" an action brought without prepayment of the filing fee "is frivolous" or "fails to state a claim on which relief may be granted." *Id.* While the failure to exhaust generally is an affirmative defense so that a plaintiff is not required to plead exhaustion in the complaint, when that failure

is apparent from materials filed by plaintiff the court may sua sponte require plaintiff to show that he has exhausted. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)(acknowledging district courts may raise exhaustion question sua sponte, consistent with 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. §§ 1915 and 1915A, and dismiss prisoner complaint for failure to state a claim if it is clear from face of complaint that prisoner has not exhausted administrative remedies); *Pusha v. Myers*, 608 Fed.Appx. 612, 613-4 (10th Cir. 2015).

An inmate is required by the PLRA to exhaust all available prison administrative remedies before he files a complaint in federal court. 42 U.S.C. § 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* The exhaustion prerequisite "is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010). The benefits of PLRA exhaustion include possible resolution at the administrative level resulting in elimination of "unwarranted federal-court interference with the administration of prisons," and

improvement of "the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court."[1]  *Id.* at 93-95; *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1237 (10th Cir. 2005)(exhaustion of administrative remedies serves "the twin purposes of protecting administrative agency authority and promoting judicial efficiency.")(quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).

The exhaustion doctrine in the PLRA mandates "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The PLRA's exhaustion prerequisite is designed to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 93. It thus requires that the prisoner "properly" exhaust the prison's administrative remedies. *See id.* at 91. This means that the inmate must fully comply with the institution's grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford*, 548 U.S. at 90.[2] An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim. *Jernigan v. Stuchell*, 305 F.3d 1030,

---

[1] Notice to those who might later be sued is not "thought to be one of the leading purposes of the exhaustion requirement." *Bock*, 549 U.S. at 219.

[2] The "inmate may only exhaust by properly following all the steps laid out in the prison system's grievance procedures." *Little,* 607 F.3d at 1249 (citing *Woodford*, 548 U.S. at 90.

1032 (10th Cir. 2002)("[T]he doctrine of 'substantial compliance' does not apply."). "The inmate must use all steps and do so properly so that the agency addresses the issues on the merits." *Woodford*, at 90. Furthermore, "it is the prison's requirements" with respect to the level of detail required in a grievance "that define the boundaries of proper exhaustion." *Bock*, 549 U.S. at 218. It should go without saying that in order for the agency to address the issues on the merits the claims raised in the administrative grievance process must have been the same as those presented in the subsequent complaint.

Mr. Goodrich was asked to explain his exhaustion of administrative remedies in his form complaint. He generally alleged that he had "fully exhausted all" administrative remedies available to him and that he filed grievances "on many occasions" that "were rejected on various technical grounds" and never resolved on the merits. Now, in response to defendant's general denials in its Answer, Mr. Goodrich has provided the record of his grievance history, which contradicts his general allegations. This court has "no obligation to examine each of plaintiff's grievances "to see whether each grievance was in fact flawed." *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112-1113 (10th Cir. 2007). Nonetheless, even a cursory examination of the grievances and responses exhibited by Mr. Goodrich reveals that he did not claim in any IR or grievance

that he became seriously ill from eating undercooked meat or that he personally suffered malnutrition or any similar medical condition or injury from the other alleged conditions in the LDC food service program.[3]  It is thus clear that Mr. Goodrich's IRs and grievances did not give defendant's employees a fair opportunity to consider and resolve his claims of personal injury caused by food poisoning and lack of proper nutrition. Officials responding to plaintiff's grievances pointed out that Mr. Goodrich also failed to grieve that he had personally witnessed or been injured by the alleged food preparation conditions.  Mr. Goodrich did not correct these deficiencies by submitting grievances stating what he observed and how he had been injured along with dates and names of participants.

---

[3]   Plaintiff's exhibited "Informal Resolutions" (IRs) and Grievances attached to Doc. 11 contain the following complaints: food watered down to stretch quantities, mushy rice, pasta, potatoes, peanut butter, pancakes, French toast; cold food, small portions; probably why bumps on inmates' bodies; kitchen staff full of violations; sanitation below standards; unused cornbread removed from returned trays and placed on outgoing trays, which posed a danger to inmates because of "many diseases in CCA;" trays sent out with raw meat and several pods sent their trays back; Ms. Hartley wiped "excess blood with paper towels;" half-cooked meatloaf soaking in blood sent to inmates for lunch and after 4 or 5 trays were sent out the "CO on duty" made them cook the food; and kitchen again sent out half-cooked meat but Pod officer noticed.  Plaintiff asked prison officials to "remove contractors" and replace entire kitchen crew with another vendor.  Plaintiff was advised that if he had a problem with his food tray he should return it to be fixed, that all recipes were followed, and that he could not file grievances for others or based upon information he was told by others rather than something he witnessed or experienced.  None of plaintiff's complaints amounts to a claim that he was served raw meat causing him to become violently ill, that he was required to expend funds to purchase numerous food items at the commissary to combat malnutrition from watered-down food; that fraudulent representations were made regarding the food preparation service or that he was injured as a result of food being prepared by an inmate not adequately screened for food service work.

Plaintiff attempts to excuse his failure to exhaust his claims of serious illness and personal injury by claiming that had he sought medical attention when he was seriously ill his discomfort would only have been increased by the wait at the clinic. These allegations are clearly insufficient to show that his administrative remedies were either unavailable or ineffective. *Gonyea v. Mink*, 206 Fed.Appx. 745, 747 (10th Cir. 2006). Plaintiff alleges that he was retaliated against for filing grievances. However, this claim is not offered as support for an argument that remedies were unavailable.[4] Even if it were, plaintiff's exhibits plainly show that prison administrative remedies were made available to and utilized by him. *See Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). Plaintiff has not alleged sufficient facts to show that the administrative process was either unavailable or ineffective.

---

[4] Plaintiff alleged in his complaint that he was "removed from general population and placed in isolation as punishment for having filed administrative remedies seeking relief from the conditions of confinement listed" in his complaint. Complaint (Doc. 1) at 4. In his Response he again alleges that he was placed in the segregation unit for attempting to exhaust. Response (Doc. 11) at 3. First, it is not clear that he fully and properly exhausted this claim. Second, his only pertinent exhibit indicates that he was placed in segregation after an incident with Ms. Hartley. Plaintiff exhibits an IR dated June 2012 in which he complained that he was placed in the hole by Mr. Spears for telling Ms. Hartley in the presence of Mr. Spears that he wanted her removed from her food service job for endangering CCA inmates. The administrative response was that an inmate can be placed in segregation on pre-hearing status when suspected of a discipline issue. His bald allegation that it was as punishment for having filed administrative remedies is not supported by facts. *See Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990)("Mere allegations of constitutional retaliation will not suffice; plaintiff[ ] must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."); *Hardeman v. Sanders*, 396 Fed.Appx. 551, 555 (10th Cir. 2010).

In summary, it plainly appears from plaintiff's own exhibits that he did not "properly" exhaust his administrative remedies on the claims alleged in his complaint because he did not file IRs and grievances that raised the same claims as those alleged in the complaint.

As previously explained, "unexhausted claims cannot be brought in federal court." *Id.* (citing *Bock*, 549 U.S. at 199)). Accordingly, the court concludes that plaintiff's § 1983 complaint is subject to dismissal without prejudice pursuant to 28 U.S.C. §§ 1915A, 1915(e)(2)(B)(ii), and 42 U.S.C. § 1997e(c)(1), for plaintiff's failure to "properly" exhaust his available administrative remedies prior to filing this lawsuit. Mr. Goodrich is given time to show cause why this action should not be dismissed for failure to exhaust. If he fails to show good cause within the prescribed time, this action may be dismissed without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff is granted fourteen (14) days to show good cause why this action should not be dismissed for failure to properly exhaust administrative remedies.

**IT IS SO ORDERED.**

**Dated this 1st day of October, 2015, at Topeka, Kansas.**

**s/Sam A. Crow**
**U. S. Senior District Judge**

10